# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

FILED

March 18, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

RICHARD WARMATH and )
PATRICIA WARMATH, )
)
      Plaintiffs/Appellees, ) Tipton Chancery No. 16384
)
VS. ) Appeal No. 02A01-9803-CH-00084
)
ROGER D. PAYNE and LAURA )
MAX RACINE in her capacity as )
Tipton County Trustee, )
)
      Defendants/Appellants. )

APPEAL FROM THE CHANCERY COURT OF TIPTON COUNTY
AT COVINGTON, TENNESSEE
THE HONORABLE DEWEY C. WHITENTON, CHANCELLOR

**ROGER D. PAYNE, pro se**
Forrest City, Arkansas

**J. HOUSTON GORDON**
**JASON G. WHITWORTH**
Covington, Tennessee
Attorneys for Appellees

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

      This case arises from the filing of a complaint to set aside a tax sale. The

complaint, which was filed by Richard Warmath and Patricia Warmath against Roger Payne and Laura Racine, the Tipton County Trustee, sought to set aside a tax sale of property that the Warmaths had owned, but that had been sold to Roger Payne via the tax sale. The Warmaths claimed that they had not been served with process in the underlying suit for the collection of delinquent land taxes, and that they were not afforded any notice of the resultant tax sale. They asserted, therefore, that the tax sale was void and should be set aside. Motions for summary judgment were filed by both the Warmaths and Payne, after which the trial court granted summary judgment to the Warmaths and denied Payne's motion for summary judgment. Based upon the following, we affirm.

## Facts and Procedural History

On September 17, 1997, the Warmaths filed their Complaint, alleging that they "were the owners of a .5 acre residential lot with improvements consisting of a house thereon." They asserted that a separate action had previously been commenced against them for the collection of delinquent land taxes, that a default judgment was entered against them on February 22, 1996, and that the property was sold via a tax sale on April 2, 1996 to Roger Payne. They claimed, however, that they had not been served with process in the separate proceedings, and that they did not receive any notice of any of the proceedings at any point prior to or during the statutory period of redemption.[1] They claimed that they were unaware of any of the relevant proceedings until they were served on August 15, 1997 with a detainer warrant that had been filed by Payne. Accordingly, they asserted that the tax sale is void and should be set aside.

On October 3, 1997, the Warmaths served a document titled Plaintiffs' First Request for Admissions, which was directed solely to Laura Racine.[2] On December 2, 1997, the Warmaths filed a motion for summary judgment. In a memorandum in support of their

---

1. Tennessee Code Annotated, title 67, chapter 5, part 27 establishes a one-year period within which a taxpayer who owns a legal or equitable interest in property that was sold at a tax sale may redeem the property. See Tenn. Code Ann. § 67-5-2701 et seq.

2. Plaintiffs' First Request for Admissions begins by stating, "Come now the Plaintiffs . . . and submit their first request for admissions to the Defendant, Laura Max Racine in her capacity as Tipton County Trustee . . . ."

2

motion, they asserted that summary judgment was appropriate based upon the matters set forth in their requests for admissions.[3]  As additional support to their motion, they filed an affidavit executed by Mr. Warmath.  Mr. Warmath's affidavit states, in part, the following:

> 3.  In March 1995, at the time of the complaint for delinquent taxes that was filed against me, my name and address were easily ascertainable to anyone who would attempt to locate me.
> 4.  At all relevant times, including March 1995 onward, my name and address have been listed in the local telephone directory for Covington, Tipton County, Tennessee.
> 5.  I and my place of residence, are well known within the community of Covington and are readily identifiable.
> 6.  I have lived at my same residence, which I personally constructed, being the same realty which is the subject of this dispute, since 1975.
> 7.  At no time was I served with a summons or complaint pertaining to the suit for delinquent taxes, nor did I have any notice or knowledge whatsoever of said tax suit or foreclosure sale until a detainer warrant was filed against me in General Sessions Court in the fall of 1997.
> 8.  At no time have I attempted to avoid service of process of any suit for delinquent taxes.

Subsequently, on January 23, 1998, the Warmaths filed an amended affidavit from Richard Warmath that restates, verbatim, each of the above paragraphs, with the following additional emphasized language added to paragraph 8:

> 8.  At no time have I attempted to avoid service of process of any suit for delinquent taxes *nor have I refused to accept mail, whether certified, return receipt requested or otherwise.  I did not receive any mail giving me notice of either the delinquent taxes owed or the complaint filed in this action.*

Also, on January 23, 1998, the Warmaths filed an affidavit from Patricia Warmath that contains the same statements, verbatim, that were set forth in paragraphs three through eight of Richard Warmath's amended affidavit.

On December 22, 1997, Payne also filed a motion for summary judgment.  In the memorandum that he filed in support of his motion, he argued, among other things, that the Warmaths had received such notice as would be sufficient to support and enforce the tax sale.  Payne also filed numerous "exhibits" to support his motion for summary

---

3.  The trial court ultimately granted summary judgment to the Warmaths, and its order granting summary judgment reveals that the trial court's reasoning was based, *in part*, upon matters deemed admitted from Racine's failure to timely respond.  Our *de novo* review of the trial court's grant of summary judgment, however, will be limited to other proof presented to the trial court because such admissions bind only the specific party to whom the request is directed (*i.e.*, Racine's admissions are not binding against Payne).  See Porter v. Melton, 1992 WL 29821 (Tenn. App. 1992) ("The language of Rule 36 is clear that a party must respond . . . , otherwise, the requests will be deemed admitted *by that party*.").  See also 8A Charles A. Wright, *et al.*, Federal Practice and Procedure § 2264 at 580 (2nd ed. 1994) (analyzing federal Rule 36, which is substantially the same as Tennessee Rule 36); 7 James Wm. Moore, Moore's Federal Practice § 36.03[6] (3rd ed. 1998) (analyzing the comparable federal Rule 36).

judgment, though most of these "exhibits" either were simply copies of earlier filed pleadings, which unnecessarily cluttered and expanded the breadth of the record,[4] or were unauthenticated documents that were improper for consideration as submitted.[5] We note, however, that the following documents were also included among Payne's "exhibits:" (1) a certified copy of the deed that originally transferred the subject property to the Warmaths on October 15, 1974; (2) a certified copy of the order for judgment by default entered against the Warmaths; (3) a certified copy of the clerk and master's deed, which transferred and conveyed the subject property to Roger Payne and which described the conditions upon which the transfer was based; and (4) a copy of a Notice of Tax Sale, which was printed in The Covington Leader[6] on Wednesday, March 13, 1996 to give public notice of a tax sale to be held Tuesday, April 2, 1996, which listed the Warmaths and the subject property.

In addition to responses that were filed to the two separate motions for summary judgment, additional affidavits were filed, including affidavits taken from Judy Barkelew and Byron Ponder. Ms. Barkelew's affidavit states the following:

> I am the Clerk and Master of the Chancery Court of Tipton County, Tennessee and held that position when the delinquent taxes of the Plaintiffs were filed in Chancery Court and notices sent out on those taxes.
> The procedure our office follows which was followed in this case is to send a letter to the taxpayer at the address provided by the assessor or any other address of which we have notice by certified mail. If the certified letter is returned to us as unclaimed as it was in this situation, we then send another letter to the same address that is not certified. If that letter is not returned to us as undeliverable, we then proceed on the grounds that the taxpayer has been given proper notice of the tax suit.
> We sent a certified letter to Mr. and Mrs. Warmath which was returned by the postal service as unclaimed and then we sent another letter that was not certified to the same address as that shown on the certified letter. This letter was never returned to us.
> The second letter we sent after the tax sale was to the address of the plaintiffs before their address was changed by 911. However, this letter was not returned to us so we deemed it as having been delivered.

---

4. This practice of submitting copies of earlier filed pleadings as exhibits to subsequent pleadings repeatedly occurred to an excessive extreme in this case, which has made our review of the record unnecessarily burdensome and difficult. Accordingly, to alleviate the added costs and difficulties associated with this unnecessary repetition, we urge parties who are filing papers to give greater consideration, in appropriate circumstances, to their ability to simply cite to other documents that have already been filed with the court. See The Bluebook, A Uniform System of Citation, practitioners' note P.7, table T.8 (16th ed. 1996).

5. The particular unauthenticated documents to which we refer were neither self-authenticating nor supported by any evidence, by affidavit or otherwise, purporting to identify or establish the authenticity of the document.

6. See Tenn. R. Evid. 902(6).

> The procedures we followed in this particular case are the same that we follow in every case.

Mr. Ponder's affidavit states that he is the postmaster of the Covington, Tipton County Post Office, and that he has knowledge that the county had a substantial problem in 1993 and 1994 in mailing tax notices due to a new "911 addressing system" that was placed into effect in February 1993. He explained that a great number of tax notices were "returned to sender" in these years.

On January 30, 1998, Payne filed and served upon the Warmaths requests for the production of documents. He concurrently filed a document titled Motion to Postpone Hearing for Summary Judgment Until Plaintiffs Have Provided Documents Requested by Defendant Under Discovery. On February 23, 1998, the Warmaths filed and served responses to the requests for documents.

The motions for summary judgment were heard by the trial court on February 24, 1998. Thereafter, on May 11, 1998, the trial court entered an order that granted summary judgment to the Warmaths and denied Payne's motion for summary judgment. By the terms of this order, the sale of the Warmaths' property to Payne was set aside and declared null and void. Payne appealed.

On appeal, Payne sets forth numerous "issues" in his statement of the issues. He has failed, however, to comply with Tennessee Rule of Appellate Procedure 27(a)(7),[7] Tennessee Rule of the Court of Appeals 6(a),[8] and/or Tennessee Rule of the Court of

---

7. Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure requires the appellant to provide in his brief an argument setting forth his contentions with respect to each issue presented, with citations to authority and appropriate references to the record. See Tenn. R. App. P. 27(a)(7).

8. Rule 6(a) of the Tennessee Rules of the Court of Appeals establishes the following:

(a) Written argument in regard to each issue on appeal shall contain:

1. A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.

2. A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

3. A statement reciting wherein appellant was prejudiced by such alleged error, with

5

Appeals 6(b)[9] with respect to the majority of these issues, and we deem such issues to be waived. In the exercise of our discretion, however, we choose to address the first issue stated below, which Payne has addressed in his argument, though without any citation to authority or references to the record. Accordingly, the following issues remain before this Court:

> I. Whether the trial court abused its discretion by failing to continue this matter before hearing the motions for summary judgment, in order to afford Payne additional opportunity to conduct discovery.

> II. Whether the trial court erred in vacating the tax sale by concluding, as a matter of law, that the Warmaths had not been afforded adequate notice of the tax sale.

## Analysis

Payne asserts that he should have been granted a continuance to postpone any hearing of the summary judgment motions in order to afford him additional opportunity to conduct discovery. While it is true that, on January 30, 1998, Payne filed and served requests for the production of documents and his Motion to Postpone Hearing for Summary Judgment Until Plaintiffs Have Provided Documents Requested by Defendant Under Discovery, no notice of any hearing upon this motion for continuance appears within the record. Furthermore, nothing within the record suggests that this motion for continuance was otherwise set for hearing or brought to the trial judge's attention. Moreover, we note that the specific relief sought by Payne's motion for continuance was "that no hearing or preceding [sic] occur until Plaintiffs' [sic] provided all documentation

---

citations to the record showing where the resultant prejudice is recorded.

   4. A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

Tenn. R. Ct. App. 6(a). This Court has not previously required any structured formality in complying with Rule 6(a), nor are we suggesting that any such formality was necessary in the instant case. It is necessary, however, for parties to include the *substance* of Rule 6(a) within the argument of their briefs with respect to each issue.

9. Rule 6(b) of the Tennessee Rules of the Court of Appeals provides:

   No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument thereon contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument upon such assertion contains a reference to the page or pages of the record where evidence of such fact is recorded.

Tenn. R. Ct. App. 6(b).

6

requested by Defense." This specific relief that was sought had, in fact, been satisfied based upon the Warmaths' timely responses to Payne's requests for production,[10] which were provided to Payne prior to the commencement of the summary judgment hearing. Last, we note that nothing in the record suggests that Payne contested the sufficiency of the Warmaths' responses prior to the summary judgment hearing, whether by a motion to compel or otherwise. Accordingly, because these matters were not properly raised before the trial court, they cannot now be raised for the first time on appeal, and we find no basis for appellate relief on these grounds. Simpson v. Frontier Community Credit Union, 810 S.W.2d 147, 153 (Tenn. 1991); Lawrence v. Stanford, 655 S.W.2d 927, 929 (Tenn. 1983).

Payne also asserts that the trial court erred in vacating the tax sale by concluding, as a matter of law, that the Warmaths had not been afforded proper notice. At this juncture, we find it appropriate to reiterate a few pertinent facts. The affidavits of Richard and Patricia Warmath state that they "did not have any notice or knowledge whatsoever of [the] tax suit or foreclosure sale until a detainer warrant was filed." The Tipton County Clerk and Master's affidavit, however, states that, at some point prior to the tax sale and after notice via certified mail was returned as "unclaimed,"[11] notice was sent "not certified." Payne contends that this proof establishes that the Warmaths received actual notice. While it is true that a rebuttable presumption of fact that mail was received *may* arise under Tennessee law, Ms. Barkelew's affidavit did not set forth the essential and necessary elements required to raise this presumption. See U.S. Life Title Ins. Co. v. Department of Commerce and Ins., 770 S.W.2d 537, 542 (Tenn. App. 1988). Such a presumption arises only upon proof that the item was duly mailed, which "requires evidence that the letter was properly addressed, properly stamped, and duly deposited with the post office." Id. (citations omitted). See also 29 Am. Jur. 2d, Evidence §§ 262-64 (1994). Because Ms. Barkelew's statement was insufficient to raise a rebuttable presumption of receipt, the Warmaths' contention, that they did not receive any actual notice of the tax suit or

---

10. The Warmaths provided their responses within 30 days in accordance with Rule 34.02 of the Tennessee Rules of Civil Procedure.

11. Payne asserts that "unclaimed" amounts to a refusal of delivery, but we decline to accept such a strained construction of this term.

foreclosure sale, is not disputed by any other competent proof.

Payne also contends that the Warmaths received constructive notice from the Notice of Tax Sale that was printed in the Covington Leader. This Court has previously recognized, however, that where constructive service or notice is resorted to, constitutional due process requirements must be satisfied. Freeman v. City of Kingsport, 926 S.W.2d 247, 249 (Tenn. App. 1996). These due process considerations "require that an interested party receive actual notice of a proceeding *in rem* which affects their interest in property if the interested party's name and address are reasonably ascertainable." Morrow v. Bobbitt, 943 S.W.2d 384, 391 (Tenn. App. 1996). See also Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 799-800 (1983). In this case, the only proof that was presented to the trial court regarding whether the Warmaths' names and address were reasonably ascertainable established that the Warmaths' names were known and that their address was easily ascertainable.[12] Accordingly, as a matter of law, constructive notice did not satisfy constitutional due process requirements, and actual notice was required. Moreover, because actual notice was not provided, as explained earlier, the tax sale violated the Warmaths' due process rights. See Sunburst Bank v. Patterson, 971 S.W.2d 1, 5 (Tenn. App. 1997).

**Conclusion**

Based upon the foregoing, we affirm the trial court's grant of summary judgment to the Warmaths and its denial of summary judgment to Payne. Costs of this appeal are taxed to Payne, for which execution may issue if necessary.

_____
HIGHERS, J.

---

12. Judy Barkelew's and Byron Ponder's affidavits suggest that the Warmaths' address had changed as a result of a new "911 addressing system." The Warmaths' affidavits, however, state that they not only lived in (*i.e.*, were in possession of) the subject property, but that their correct address was listed in the local telephone directory and that the residence was well known and readily identifiable within the community.

8

CONCUR:

_____
FARMER, J.


_____
LILLARD, J.


_____
FARMER, J.