**Jessie BULLINGTON**

v.

**GREENE COUNTY, et al.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

May 30, 2002.

Permission to Appeal Denied by
Supreme Court Nov. 4, 2002.

Clinton R. Anderson, Morristown, Tennessee, for the appellant, Jessie Bullington.

Roger A. Woolsey, Greeneville, Tennessee, for the appellee, Greene County, Tennessee.

J. Russell Pryor, Greeneville, Tennessee, for the appellee, H.E. Childress.

J. Ronnie Greer, Greeneville, Tennessee, for the appellees, Guy Cupp and wife, Jenny Ruth Cupp.

**OPINION**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

On April 3, 1995—following the entry of a default judgment against the unknown heirs of James Turner—real property that had been owned by the late Mr. Turner was sold at a public tax sale to satisfy delinquent property taxes due Greene County. On May 15, 1998, Jessie Bullington ("the plaintiff") filed a "Complaint to Quiet Title and for Damages" against the County; the purchaser at the tax sale; and the present owners of the subject property, requesting, among other things, that "[t]he title to the property be quited [sic] and the [plaintiff] be declared the owner in fee simple of said property." The proof is clear that the plaintiff purchased the subject property in 1992. He argues that, as the record title owner of the property, he was entitled to actual notice of the delinquent tax suit filed by the County. The defendants, on the other hand, claim that the notice by publication

inserted in a local newspaper pursuant to the order of the Greene County Chancery Court was sufficient compliance with the requirements of due process under the facts of this case. The defendants also contend that the plaintiff's suit is barred by the statute of limitations, and, additionally, that it should be dismissed because, so the argument goes, the plaintiff failed to make a sufficient payment into court to cover the back taxes, "the bid" at the tax sale, and other sums, all as required by T.C.A. § 67–5–2504(c) (1994) and as ordered by the trial court. The court below dismissed the plaintiff's suit, finding that he was not entitled to actual notice and that the deposit made by the plaintiff into the registry of the court did not satisfy the requirements of T.C.A. § 67–5–2504(c). Plaintiff appeals. We reverse and remand for further proceedings.

## I.

The plaintiff and James Turner were married to sisters. Turner, who owned property improved with a house in Greene County, was in need of money and asked the plaintiff to buy the remainder interest in his property. The plaintiff agreed and purchased the interest for $7,000. On November 11, 1992, Turner executed a "Deed Retaining Life Estate" in favor of the plaintiff, by which he conveyed to the plaintiff the remainder interest in the property. He delivered the deed to the plaintiff, but asked that it not be recorded during his—Turner's—lifetime. The plaintiff accepted the deed subject to this condition.

Turner died on October 30, 1993. The plaintiff recorded the deed in the Office of the Greene County Register of Deeds on February 28, 1994. The deed was stamped by a deputy in the Office of the Greene County Property Assessor ("the Property Assessor") with the date of March 1, 1994.

On April 4, 1994, Greene County filed a delinquent tax suit against a number of taxpayers, including the late Mr. Turner. As to the latter, the suit was then based on delinquent taxes due for the year 1992.[1] Notice of the suit was sent to Turner via certified mail on December 15, 1994. The notice was returned by the United States Postal Service with the notation "deceased" affixed to the outside of the envelope.

On January 13, 1995, an order was entered in the tax suit directing that several defendants, including the "unknown heirs of James Turner," be served by "Notice of Publication appearing in the Greeneville Sun." Following publication and after no appearance was made in the tax suit with respect to the Turner property, a default judgment was entered on March 15, 1995, as to several defendants, including the unknown heirs of James Turner. The subject property, along with other parcels, was sold at a tax sale on April 3, 1995. H.E. Childress bought the subject property at the sale. The sale to Childress was confirmed by court order entered on April 20, 1995, and re-entered on May 16, 1995. Once the redemption period had expired, the Clerk and Master executed and delivered a deed to Childress on July 1, 1996.

The plaintiff testified that he had no knowledge of the tax suit prior to September, 1996, when his tenant informed him that Childress had come to the property and demanded that the tenant pay rent to him.[2] The plaintiff and his wife both testi-

---

1. The plaintiff testified that Turner's son had told him that he and his siblings would pay the 1992 taxes. Turner's son testified that he told the plaintiff he would pay the taxes pro-

vided his siblings agreed to help him with the payment.

2. Childress testified that he waited until the period for redemption had passed.

fied that they sought the advice of an attorney shortly thereafter.

On July 11, 1997, Childress deeded the property to Guy Cupp, and wife, Jenny Ruth Cupp. The following year, on May 15, 1998, the plaintiff filed suit against Greene County, Childress, and the Cupps, taking the position that the default judgment was void as to him for lack of constitutionally-mandated notice of the tax suit and that, consequently, the tax sale was void. Childress filed a motion to dismiss, claiming, among other things, that the plaintiff had failed to pay into court an amount equal to the amount of Childress's bid, the subsequent unpaid taxes, and interest. Following a hearing on the motion on August 5, 1998, the trial court ordered the plaintiff to pay the sums required by T.C.A. § 67–5–2504(c).[3] Two days later, the plaintiff paid $406 into the registry of the court.

The case proceeded to a bench trial on May 16, 2001. After taking the case under advisement, the trial court filed an exhaustive memorandum opinion, finding that the plaintiff's complaint should be dismissed. The court ruled that, because the plaintiff failed to register his name and address with the Property Assessor as required by T.C.A. § 67–5–2502(b) (1994), the plaintiff was not entitled to actual notice of the delinquent tax proceedings, and that the constructive notice by publication was sufficient under the circumstances. The court further held that the plaintiff failed to deposit the requisite amount of money into court, as mandated by T.C.A. § 67–5–2504(c) and as directed by the trial court's earlier order. The court rejected the defense of the statute of limitations, finding that the plaintiff's complaint was timely filed. A judgment incorporating the court's memorandum opinion was entered August 3, 2001. This appeal followed.

## II.

Since this case was litigated at a bench trial, we review the trial court's factual findings *de novo* on the record made below. Tenn. R.App. P. 13(d). We are required to presume the correctness of these findings, unless the evidence preponderates against them. *Id.; Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). The trial court's conclusions of law are also reviewed on appeal *de novo*, but without a presumption of correctness. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn.1996).

## III.

The individual defendants contend that the plaintiff's complaint was not filed within the applicable statute of limitations, *i.e.*, T.C.A. § 67–5–2504(d) (1994).[4] The trial court held that the triggering event in the instant case as concerns the three-year period of limitations was the "re-ent[ry]" of the "Confirmation of Sale" order on May 16, 1995. It appears from the record before us that this order was originally entered April 20, 1995, and re-entered May 16, 1995.

We do not have the complete record of the tax suit proceedings.[5] The record we

---

**3.** T.C.A. § 67–5–2504(c) provides as follows:

No suit shall be commenced in any court of the state to invalidate any tax title to land until the party suing shall have paid or tendered to the clerk of the court where the suit is brought the amount of the bid and all taxes subsequently accrued, with interest and charges as herein provided.

**4.** T.C.A. § 67–5–2504(d) provides, in pertinent part, as follows:

No suit shall be commenced in any court of the state to invalidate any tax title to land after three (3) years from the time the land was sold for taxes, . . . .

**5.** Certain pleadings from the tax suit record were filed as exhibits in the instant action.

do have does not reflect why this order was re-entered; however, in the absence of the complete record of the earlier proceedings, we can only assume that had the complete [6] record of the tax suit proceedings been filed in the instant case, it would have supported the trial court's finding that the real effective date of the confirmation of sale order was May 16, 1995. *See Sherrod v. Wix,* 849 S.W.2d 780, 783 (Tenn.Ct.App.1992).

▪ Since a delinquent tax sale is not complete until it is confirmed by the trial court's order, *see Marlowe v. Kingdom Hall of Jehovah's Witnesses,* 541 S.W.2d 121, 125 (Tenn.1976), and since this apparently occurred on May 16, 1995, the plaintiff's complaint filed on May 15, 1998, was filed within the three-year period of limitations.[7]

### IV.

▪ The trial court held that the plaintiff had failed to comply with the provisions of T.C.A. § 67–5–2504(c) mandating that "[n]o suit shall be commenced ... to invalidate any tax title to land until the party suing shall have paid or tendered to the clerk of the court ... the amount of the bid and all taxes subsequently accrued, with interest and charges as herein provided." Specifically, the trial court found as a fact that the $406 deposit made by the plaintiff was insufficient to cover the categories specified in the statute. The plaintiff argues that the deposit was sufficient. As a part of his argument, he contends that 1998, 1999, and 2000 taxes should not be considered since they were not delinquent when the plaintiff made his deposit of $406.

We find that the evidence preponderates against the trial court's finding that the deposit of $406 was insufficient. The report of sale filed by the Clerk and Master on April 17, 1995, reflects the following with respect to Childress' bid:

The following tract or parcel of land was sold to H.E. CHILDRESS for *$170.00.* The amount of taxes, penalties, and interest and cost on said parcel being the sum of $162.17. Said real estate is described as follows: 6th Civil District, Map 069, Parcel 04100, in Deed Book 171, page 165; assessed in the name of JAMES TURNER (or Unknown).

(Emphasis added). The record also reflects that the property taxes due for each of the years of 1998, 1999, and 2000 were $44. The record does not reflect the amount of the taxes for 1996 and 1997, but the record supports a finding that each year's taxes were in the range of $35.00 to $44.00. Since the taxes for 1992 and 1993 [8] were accounted for in Childress' bid and since Bullington paid the taxes for 1994 and 1995, the unpaid taxes to be covered by the plaintiff's deposit, even assuming $44 for each of the five years, would amount to $220. Interest and other charges would have been minimal. Thus, even ignoring the plaintiff's argument with respect to the taxes for 1998, 1999, and 2000, it appears that the evidence preponderates against the trial court's finding that the deposit of $406 was insufficient. At a minimum, we find substantial compliance with the statutory requirements.

When Childress was asked what he paid for the property, he replied, "I don't know. At least $480." The $480 figure may well have come from the receipt he received

---

**6.** The trial court had before it the complete file of the tax suit.

**7.** *Cf. Marlowe,* 541 S.W.2d at 124 ("[W]here the taxpayer is not properly before the court,

the resulting decree and sale is a nullity as to him and may be assailed at any time.")

**8.** By the time the property was sold, 1993 taxes were also delinquent.

from the Register of Deeds when he recorded his tax deed. That document reflects the $480 figure as the "greater of consideration or *value.*" (Emphasis added). We recognize that Childress did not mention this receipt when he testified; but his testimony with respect to the $480 figure was somewhat ambivalent and we believe it is reasonable to assume that his "I don't know" answer was probably "jogged" by the receipt from the Register of Deeds that was received as a stipulated exhibit at the start of the proceedings below. In any event, the $480 figure is contradicted by the more reliable figure of $170 found in the report of sale by the Clerk and Master.

Accordingly, we find that the evidence preponderates against the trial court's factual finding with respect to the plaintiff's deposit of $406.

### V.

### A.

The trial court refused to invalidate the tax sale of the plaintiff's property because it determined that the following question, as phrased in the court's memorandum opinion, was properly answered in the negative:

> Should the tax deed to [d]efendant Childress, regarding real property sold at a delinquent tax sale, be rendered void by virtue of a failure to serve legally sufficient process upon [p]laintiff in connection with the respective tax suit?

This issue and the trial court's finding with respect to it prompt us to examine the applicable law regarding the notice required in an *in rem* proceeding.

### B.

The Due Process Clause of the Fourteenth Amendment of the United States Constitution guarantees that no person can be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. In 1950, the U.S. Supreme Court recognized that an action cannot proceed against a person or entity that would affect an interest in life, liberty, or property unless the State first provides "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In *Mullane*, the Court held that merely publishing notice of an action involving a common trust fund was not sufficient to satisfy due process requirements when the names and addresses of the trust fund beneficiaries were known:

> Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when as here the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence with actual notice we are unable to regard this as more than a feint.

*Id.* at 315, 70 S.Ct. at 658.

*Mullane* was a milestone in the development of due process law because it essentially did away with the distinction between the notice requirements of *in rem* and *in personam* actions. *Id.* at 312, 70 S.Ct. at 656. While *in personam* actions, prior to *Mullane*, required actual notice to a nonresident defendant of a pending proceeding, constructive notice to a nonresi-

dent was thought to be enough to satisfy due process requirements for *in rem* actions. After the *Mullane* decision, the Supreme Court has "required the State to make efforts to provide actual notice to all interested parties comparable to the efforts that were previously required only in *in personam* actions." *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 796 n. 3, 103 S.Ct. 2706, 2710 n.3, 77 L.Ed.2d 180 (1983); *see Walker v. City of Hutchinson*, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956) (holding that publishing notice of condemnation proceedings in a local newspaper was not sufficient to notify landowner, when the city knew landowner's name and name was on official records); *Schroeder v. City of New York*, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (holding that notice of condemnation proceedings published in a newspaper and posted was insufficient to notify property owner when his name and address were readily ascertainable from tax rolls and deed records).

Following the path paved by *Mullane*, the Court in *Mennonite Board of Missions v. Adams* further clarified the due process standard. *Mennonite* involved an Indiana tax sale statute which allowed the State to institute tax sale proceedings without requiring personal service to the mortgagee of the property. *Mennonite*, 462 U.S. at 792–93, 103 S.Ct. at 2708. In holding that the statute violated the due process requirements of the 14th Amendment, the Court stated the following:

> Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable. Furthermore, a mortgagee's knowledge of delinquency in the payment of taxes is

not equivalent to notice that a tax sale is pending.

*Id.* at 800, 103 S.Ct. at 2712 (emphasis in *Mennonite*).

In Tennessee, courts have consistently applied the holding in *Mennonite* to cases involving a tax sale of real property. In *Freeman v. City of Kingsport*, this Court held that when constructive notice is utilized, the requirements of due process must be satisfied. 926 S.W.2d 247, 249 (Tenn.Ct.App.1996). Relying on *Mennonite*, this Court has stated that due process requires that "an interested party receive actual notice of a proceeding *in rem* which affects their interest in property if the interested party's name and address are reasonably ascertainable." *Morrow v. Bobbitt*, 943 S.W.2d 384, 391 (Tenn.Ct.App. 1996). Further, in addressing a party's entitlement to due process, this Court has noted that " 'a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation.' " *Sunburst Bank v. Patterson*, 971 S.W.2d 1, 5 (Tenn.Ct.App.1997), quoting *Mennonite*, 462 U.S. at 799, 103 S.Ct. at 2712.

In a more recent opinion of this Court, the plaintiffs' property was sold at a tax sale upon a failure to pay delinquent property taxes. *Warmath v. Payne*, 3 S.W.3d 487, 488 (Tenn.Ct.App.1999). Constructive notice was effected by way of publication in the local newspaper. *Id.* at 490. Addressing the sufficiency of notice, in the context of the holding in *Mennonite*, we held as follows:

> In this case, the only proof that was presented to the trial court regarding whether [the plaintiffs'] names and address were reasonably ascertainable established that [the plaintiffs'] names were known and that their address was easily ascertainable. Accordingly, as a matter of law, constructive notice did not satisfy constitutional due process re-

quirements, and actual notice was required. Moreover, because actual notice was not provided, . . . the tax sale violated [the plaintiffs'] due process rights. *Id.* at 492 (footnote omitted).

### C.

The trial court reasoned that the plaintiff was not entitled "to any notice more than publication in the newspaper" because the court found that he had failed to comply with the provisions of T.C.A. § 67–5–2502(b). That code provision provides as follows:

It is the responsibility of the property owner to register the property owner's name and address with the assessor of property of the county in which the land lies.

The trial court held that the purpose of this code provision "was to give those persons who were not record owners responsibility of registration." The court concluded from this that a "[f]ailure to meet this responsibility resulted in the loss of some of the property owner's rights," citing an unreported case of this court.[9]

■ In general terms, T.C.A. § 67–5–2502 addresses the concept of notice "[i]n the event of a sale under a decree of the court." *Id.* at (a)(1). By its language, it pertains to "tracts or parcels of land." *Id.* Prior to the amendment effective April 22, 1996,[10] the pertinent provisions of T.C.A. § 67–5–2502, including subsection (b) quoted above, provided as follows:

9. *Vaughan v. Morris,* C/A No. 01A01–9603–CH–00105, 1996 WL 465201 (Tenn. Ct.App. M.S., filed August 16, 1996). This is a memorandum opinion. *See* Tenn. Ct.App. R. 10. Accordingly, it "shall not be cited or relied on for any reason in any unrelated case." *Id.*

10. *See* Chapter 787, Section 3, Public Acts of 1996. The statute was amended again effective May 7, 1998. Currently, T.C.A. § 67–5–2502(c) provides that

(3) Notice to parties or others in delinquent tax suits and sales shall be governed by the Tennessee Rules of Civil Procedure, and may be forwarded to the address of an owner of the property which is on record in the office of the assessor of property.

(b) It is the responsibility of the property owner to register the property owner's name and address with the assessor of property of the county in which the land lies.

(c)(1) Any person claiming an interest in taxable real property who is not in possession of that property shall be deemed to have waived any right to notice provided by § 67–5–2415 or this section unless such person shall file a statement declaring such interest with the assessor of property.

(2) Such statement shall be on a form prescribed by the assessor of property and shall include:

(A) A description of the interest claimed;

(B) The name of the person in possession of the property; and

(C) The address to which any such notice is to be sent.

(3) Any person claiming an interest and not waiving right to notice provided by § 67–5–2415 or this section shall file the statement required by this subsection annually between December 1 and December 31.

[t]he delinquent tax attorney shall make a reasonable search of the public records in the offices of the assessor of property, trustee, local office where wills are recorded, and register of deeds and give notice to persons identified by the search as having an interest in the property to be sold. The court shall set a reasonable fee for this service.

(4) At least once each year prior to December 1, the county trustee shall cause to be published in a newspaper of general circulation, a notice that any person claiming an interest in taxable real property as described above must file a statement as described above, or such person shall be deemed to have waived any right to notice as provided by § 67–5–2415 or this section.

Since the instant case arose before the effective date of the 1996 amendment, the just-quoted language of the statute is applicable to the facts of this case.

It seems clear to us that subsection (b) and not subsection (c) is the controlling authority applicable to the plaintiff. This is because he was, by virtue of his deed from Turner and following the latter's death, the "property owner" as contemplated by subsection (b). The statute differentiates between a "property owner," as addressed in subsection (b), and a "person claiming an interest in taxable real property who is not in possession of that property," *e.g.*, a mortgagee or remainderman, as covered by subsection (c)(1)-(4). Our task is to determine whether the plaintiff—"the property owner" after Turner's death—complied with subsection (b). We believe the record before us demonstrates full compliance by the plaintiff with the requirements of that statute.

A certified copy of the recorded Turner–to–Bullington deed is an exhibit in the record. The certification with seal of the Greene County Register of Deeds reflects that the subject deed was "[r]eceived for record" at 10:55 a.m. on February 28, 1994. The certified copy further reflects a filled-in stamp reflecting that "the person responsible for payment of taxes is"

s/Jesse Bullington [11]
P O Box 265
Bulls Gap, Tn

Also a part of the certified copy of the deed is the stamp of Eddie Yokley, "Property Assessor Greene County," by a deputy whose initials appear following Mr. Yokley's printed-in-ink name. Curiously, the stamp is dated March 1, 1994, *the day after* the Register of Deeds has certified that the deed, with the property assessor's stamp, was recorded in the Register's Office.

The certified copy of the deed shows that it was prepared by Leroy Tipton, Jr., an attorney in Greeneville. The deed also contains an oath as to consideration or value signed by "Jesse Bullington" and notarized by a deputy in the Register's Office on February 28, 1994. Significantly, the signature on the "person responsible for payment of taxes" stamp and the notarized oath in the Register's Office on February 28, 1994, appear to be the work of the same hand.

From all of the above, it is reasonable to find the following facts: the plaintiff was at the Register of Deeds' Office on February 28, 1994; *before he went there,* he first visited the Property Assessor's Office; while at the latter office, he affixed his name and address to the deed as the "person responsible for payment of taxes"; and, at the same time, someone in the Property Assessor's Office had before him or her the Turner–to–Bullington deed. Since the Property Assessor is the courthouse official responsible for assessing property taxes, it is reasonable to assume that the "person responsible for payment of taxes" stamp is the Property Assessor's stamp. Therefore, from all of this, it is reasonable to assume that the latter stamp

11. There is no explanation in the record as to why "Jessie" Bullington signed his name as "Jesse."

was placed on the deed by someone in the Property Assessor's Office; that it was filled out by the plaintiff in that office; and that, once this was done, the Property Assessor's other stamp was affixed to the deed and signed by one of his deputies.

It is not clear how the Property Assessor's stamp came to be dated March 1, 1994, on a deed that was recorded February 28, 1994. This may simply have been the result of a "date" mistake in the Property Assessor's Office; but, in any event, the discrepancy in dates is not significant. What is significant, as we will see, is that the deed, *with the name and address of the plaintiff,* was *seen* in the Property Assessor's Office, prior to its recordation in the Register of Deeds' Office at 10:55 a.m. on February 28, 1994.

T.C.A. § 67–5–2502(b) requires a "property owner" to "register" his name and address with the assessor of property. The plaintiff testified, without contradiction, that his true residence address was, at all relevant times, as reflected on the deed. Subsection (b) of T.C.A. § 67–5–2502 does not specify the manner in which the "property owner" is to "register" his name and address. In other words, the legislature has not specified any particular formality with respect to this requirement. We find and hold that the plaintiff "register[ed]" his name and address with the Property Assessor when he went to that office and filled out the "person responsible for payment of taxes" stamp. Accordingly, we hold that the evidence preponderates against the trial court's determination that the plaintiff failed to comply with the provisions of T.C.A. § 67–5–2502(b).

■ When Greene County filed its delinquent tax suit on April 4, 1994, and when it attempted to serve that suit by certified mail on December 15, 1994, and when the order for publication was entered on January 13, 1995, Greene County was chargeable with knowledge that the plaintiff was the "property owner" of what had been Mr. Turner's property.

The defendants argue that its system for collecting property taxes and for mailing notices of taxes due and delinquent tax notices is premised on a procedure that does not recognize a grantee of property as the "property owner" until January 1 of the year following the recorded transfer of property. Thus, they argue that the grantee reflected in a deed recorded on February 28, 1994, would not be picked up as such until January 1, 1995, well after the delinquent tax suit proceedings were commenced on April 4, 1994.

The procedure utilized by the County for notification and collection, *prior to the commencement of legal proceedings to sell property on which delinquent taxes are due,* is all well and good. However, once steps are taken to advance the collection process into court, a whole different set of rules "kicks in." Once the legal system is invoked, looking to the sale of property to collect delinquent taxes, it is incumbent upon the County to satisfy the requirements of due process by making sure that "an interested party receive[s] actual notice of a proceeding *in rem* which affects their interest in property *if the interested party's name and address are reasonably ascertainable."* *Morrow,* 943 S.W.2d at 391 (emphasis added). In the instant case, the County knew, or, at a minimum, was chargeable with knowledge of, the name and address of the "property owner" of the subject property *before* it took any legal action to sell the plaintiff's property for delinquent taxes. This being the case, the plaintiff was entitled to actual notice of the delinquent tax suit with respect to his property. Since the proof is clear that he was not given, and did not have, such

notice, the entry of the default judgment as to him violated due process.

The defendants argue that the plaintiff could have taken steps to protect his interest in this matter by recording his deed in 1992 when it was first delivered to him. While this may be true, it does not affect the outcome in this case. The plaintiff's failure in this regard does not relieve the County of its constitutional obligation. *Sunburst Bank*, 971 S.W.2d at 5.

It results that the tax sale to the defendant Childress is void, being based upon a constitutionally-flawed default judgment as to the plaintiff. He is still the owner of the subject property.

## VI.

The judgment of the trial court is reversed and this case is remanded for further proceedings, consistent with this opinion. Costs on appeal are taxed against the defendants.