IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 14, 2005 Session

# DENNIS WILSON v. BLOUNT COUNTY, TENNESSEE; DARRELL McEACHRON; and DANNY K. CARRIGAN

Direct Appeal from the Chancery Court for Blount County
No. 2003-081     Hon. Telford E. Forgety, Jr., Chancellor

No. E2004-02593-COA-R3-CV  - FILED NOVEMBER 14, 2005

In this action against the County, which sold plaintiff's properties at a back tax sale, plaintiff charges sheriff failed to comply with process statutes before returning the process "not to be found" and county improperly relied on publication to give notice to plaintiff.  The Trial Court held sheriff exercised due diligence and constructive notice was proper.  On appeal, we reverse.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and SHARON G. LEE, J., joined.

Charles Dungan, Maryville, Tennessee, for appellant.

Norman H. Newton, LaJuana G. Atkins, and Robert N. Goddard, Maryville, Tennessee, for appellee, Blount County, Tennessee.

**OPINION**

**The Pleadings**

Plaintiff's Complaint alleged that land he owned in Blount County was sold at a tax sale to defendants McEachron and Carrigan, but the sale was void or voidable due to faulty notice.

He averred that he lived at 1074 North Union Grove Road in Friendsville, and that on April 2, 2001, Blount County filed suit for delinquent taxes for 1999, and named "Wilson Dennis" as a defendant. He further alleged that on May 10, 2001, two summonses were issued for "Wilson Dennis" and listed the address as P.O. Box 550, Louisville, TN 37777, and the Blount County Sheriff returned both summonses on June 4, 2001, stating "diligent search made and not to be found in my county". Further that publication was made, and a default judgment entered on December 19, 2001, and the parcels were then sold to McEachron and Carrigan, by deeds executed by the Clerk in April of 2003.

The plaintiff alleged that the Sheriff's only action to locate him was to send a letter to his P.O. Box, that no other efforts were made, and that his son was living on the property during that time.

He charged that his constitutional rights had been violated, and that he was entitled to damages pursuant to 42 U.S.C. §1983.

Defendant Blount County in its Answer, asserted that the post office box was the address which Wilson had listed in the tax assessor's office and on the deed, and that it was his responsibility pursuant to Tenn. Code Ann. §67-5-2502 to register his address with the tax assessor, or he would be deemed to have waived notice. As an affirmative defense, Blount County pled Tenn. Code Ann. §67-5-2415(d) which allowed constructive service of process.

**The Trial**

The trial was held on August 8, 2004, and Mike Morton, property assessor for Blount County, testified that he was custodian of tax records for the county, and that one of the parcels showed it had a mobile home on it in 2001. He testified the owner was listed as Dennis Wilson, and his address was P.O. Box 550, Louisville. He testified that one parcel showed a physical address of 1074 Union Grove Road, and the other parcel a physical address of 1068 Union Grove Road.

The parties stipulated to certain exhibits, including the delinquent tax sale suit, the summons for Wilson, and the publication notice and default judgment.

The next witness was Randy Mercks, a captain in the Blount County Sheriff's department, who testified that when a civil process or subpoena is received, it would be logged into a computer system, and then in most cases a letter would be sent to the address on the summons by regular mail, advising the person that process had been issued and that they could come by and pick it up if they chose to do so. He testified the purpose of the letter was to advise the person that process had been issued and to advise the person to pick it up by a certain date to avoid embarrassment, and if it was not picked up, an officer would be assigned to serve the process on the party.

Mercks testified he recalled having received and returned the summonses for Wilson, as the summonses were related to two different parcels of property. He testified that a letter was sent to the address on the summonses and they received no reply. Mercks testified that if a reply had been received the summonses would have been assigned to an officer to serve, but in this instance it was handled by him personally, and since no reply was received and the address was a post office box, he would normally go through the phone book and look for a listing. He testified that if there was no listing, he would consider that a diligent search.

He testified he could not specifically remember checking the phone book in this instance, but that was his normal procedure. He admitted that he did not call the tax assessor's office or check with any utility providers, since he knew publication would follow and the property owner should get notice by that method.

Mercks testified he could do more if he had the personnel, like go to the courthouse and go through utility records, etc. He was aware that the postal authority had a form where a person could request information regarding post office box holders, but he did not do that. He further testified that he had used to check 911 records before the software change, but they could no longer access the same in his office. Further, he was not sure whether the software had changed at the time of this process.

Plaintiff testified that he had lived at 1074 North Union Grove Road since 1987, and that he owned the two pieces of property at issue at that address, and he had a mail box there with a number on it. He testified he had a mobile home on the property, and he had a post office box, No. 550, in Louisville since the early 1980's. He testified that he and his wife had divorced and that he left in November 1999, to go to Seattle to help his son in his business for a few months. He testified that his wife remained on the property until the divorce, then his other son moved onto the property. He was in daily contact with them while he was in Seattle. He testified he came back to the property in April 2000 and stayed for a few months, and that his son was to pick up his mail and pay his bills while he was away. He testified he never received any letters regarding the delinquent tax suit or summonses, and he had no notice of the same.

He testified he was in Tennessee in May and June, 2001, when the summonses were issued, and he was residing on the subject property. Further, that he was in Seattle from July 2000 until 2003. He testified that during the time the letter was supposedly sent, his son and ex-wife had access to his post office box, and that he had electrical service on the property in his name since 1989. He admitted that he had an unlisted phone number, and that he placed a new mobile home on the property in August or September of 2000, and that while he was away his son paid his utility and phone bills, etc., and he "did not even think about" paying his property taxes in 1999, but if he had gotten a notice he would have paid them.

Plaintiff's son, Dennis, testified that he lived at 1074 North Union Grove Road, and had since November 2000. He took care of his father's bills as he picked up the mail from the post office box. He testified that he and his two brothers, in addition to his father and ex-step-mother,

had access to the box, and he took care of paying his father's utility bills and other monthly bills. He also testified that his father came back to Tennessee during that time for short periods, but he could not remember the date. He testified that since November 2000, that his father had not been in Tennessee for a period of more than two or three weeks.

Margaret Anderson, plaintiff's ex-wife, testified that she had access to the post office box No. 550, and received mail there, and that when she picked up mail she would get hers and just put the rest on the floorboard of her car, and would make no effort to deliver to Wilson. She testified that she later had a wreck and her car was totaled, and whatever was there was thrown away. Further, that he car wreck was in May or June of 2001, and that she was angry at Wilson over the divorce and did not care whether he got his mail or not.

## The Court's Decision

The Trial Court ruled that the evidence was undisputed that the tax suit was filed, the summonses were issued and sent to the Sheriff's Department, and that a letter was mailed to the address listed on plaintiff's deed. The Court found that the letter was mailed to the correct address and was not returned, and that during that time period other people had access to the post office box, and they did not see to it that Wilson received his mail.

The Court ruled the Sheriff's Department used due diligence to give Wilson notice because the letter which was mailed was not returned, then the Sheriff's Department took a further step by looking for a phone listing in the phone book, where no listing was found. The Court observed that the evidence was that the Sheriff's Department could have done more than that, but they at least did those things.

The court, relying on case law, ruled that with in rem actions, the parties had to be given the best notice possible under the circumstances, and that Tennessee Courts had held that publication notice was sufficient to satisfy the requirements of due process in tax cases. Based upon the Court's finding, the Court dismissed the Complaint.

## Issues Presented on Appeal

1.  Did the trial court err in holding that the Blount County Sheriff's Department used due diligence to give plaintiff actual notice?

2.  Did the trial court err in holding that service of process by publication was proper?

3.  Were plaintiff's due process rights violated?

4. Did the trial court err in applying a presumption that the letter in question was received by plaintiff?

5. Did the trial court err in failing to award damages to plaintiff pursuant to 42 U.S.C. §1983?

The determinative issue on appeal is whether the Sheriff could have ascertained the location of defendant's residence "upon diligent inquiry" before returning the process "not to be found".

Tenn. Code Ann. §67-5-2414 states that all tax suits, "whether brought in the chancery court or circuit court, shall be prosecuted according to the rules of procedure of courts of chancery". Tenn. Code Ann. §21-1-203 deals with proceedings in chancery, and states that personal service upon a defendant is dispensed with in certain instances, including when "the sheriff shall make return upon any leading process, that he is not to be found" and when "the residence of the defendant is unknown and cannot be ascertained upon diligent inquiry." Tenn. Code Ann. §67-5-2415 (a) and (b) state that in tax lien enforcement suits, the defendant, "when served in any manner according to the Rules of Civil Procedure, either by mail or in person, does not have to be served with a copy of the complaint and exhibit and instead, the clerk may issue a notice to accompany the summons . . . the notice shall identify the suit mentioned in the summons sufficiently to enable the taxpayer to know what delinquent taxes the taxpayer is being sued for and what property is subject to the lien." Subsection (e) states that "personal service of process may be dispensed with and the summons and notice may be sent by certified or registered mail, return receipt requested." Tenn. Code Ann. §67-5-2502(a)(3) deals with notice of a tax sale, and states that notice to parties in a delinquent tax suit "shall be governed by the Tennessee Rules of Civil Procedure, and may be forwarded to the address of an owner of property which is on record in the office of the assessor of property." Subsection (b) states that it is the property owner's responsibility to "register the property owner's name and address with the assessor of property of the county in which the land lies."

In *Marlowe v. Kingdom Hall of Jehovah's Witnesses*, 541 S.W.2d 121 (Tenn. 1976), the Supreme Court held that, pursuant to the predecessor statute to Tenn. Code Ann. §21-1-203, if the sheriff returned process stating the defendant was not to be found, even if that return was false, such return was sufficient to support publication as a matter of law, and that in such in rem actions, constructive notice by publication was sufficient under state and federal constitutions. *Id.* In this connection, *also see*, *4945 Florida Corp. v. Caldwell*, 1994 WL 594923 (Tenn. Ct. App. Nov. 2, 1994).

Plaintiff cites *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950), to support his position wherein the Court stated that with in rem actions, the parties had to be given the best possible notice under the circumstances. Later cases in this jurisdiction have followed the U.S. Supreme Court's rulings in *Mullane* and in the later case of *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983), however, and require that in in rem actions, actual notice must be given if the interested party's name and address are "reasonably ascertainable". *See Freeman v. City of*

*Kingsport*, 926 S.W.2d 247 (Tenn. Ct. App. 1996). In *Freeman*, the heirs of a deceased property owner filed suit to set aside a tax sale of certain property in which they held a remainder interest. *Id.* Notice of the sale had been sent to the property owner of record via certified mail, and was returned with a notation that the person was deceased. *Id.* A summons was then issued and was returned by the deputy stating the person was deceased. Notice was then made by publication to the "unborn and unknown heirs" of said owner. Default judgment was subsequently entered and the property was sold. *Id.*

The Court held that where constructive service is resorted to, "constitutional safeguards must be satisfied". *Id.* at 249. Based on *Mullane* and *Mennonite*, this Court held that actual notice was required if the interested party's name and address were "reasonably ascertainable". The Court said:

> The standard is one of reasonableness, and the Court makes clear that taxing authorities are not required to "undertake extraordinary efforts to discover the identity and whereabouts" of an interest party. We conclude that this standard is essentially codified in T.C.A. §21-1-203 which requires diligent inquiry to locate and notify the owners of the property of the suit to enforce the tax lien. The issue of whether these plaintiffs' names and addresses were reasonably ascertainable is a question of fact and must be determined upon trial.

*Id.* at 249. *Accord: Morrow v. Bobbitt*, 943 S.W.2d 384 (Tenn. Ct. App. 1996) and *Sunburst Bank v. Patterson*, 971 S.W.2d 1 (Tenn. Ct. App. 1997).

The foregoing authorities have subsequently been applied in cases dealing with possessory owners who were mailed a notice, but claimed they did not receive same. *See Warmath v. Payne*, 3 S.W.3d 487 (Tenn. Ct. App. 1999). *Also see, Romans v. Tatum*, 1999 WL 415175 (Tenn. Ct. App. June 23, 1999).

Based on the foregoing authorities, the issue that must be resolved is whether Wilson's address was reasonably ascertainable. In this case, the Trial Court found the sheriff's inquiry was diligent, and thus found that personal service could be dispensed with and constructive notice by publication was sufficient.

The Trial Court's holding, however, does not comport with the holdings of this Court in *Freeman* and its progeny, relying upon *Mullane* and *Mennonite* opinions of the U.S. Supreme Court. As stated in *Freeman*, the sheriff was not required to "undertake extraordinary efforts", but did require reasonable efforts. While the Trial Court's finding of diligent effort could arguably be equated to reasonableness, the evidence preponderates against that finding, Tenn. R. App. P. 13(d).

Captain Mercks testified that when no reply was received from the letter sent to the post office box, his normal procedure would have been to look in the telephone directory for a listing. Finding no listing, Mercks testified he would return the summons as unable to locate the

defendant, having neither the time nor personnel to search further. He testified that he realized he could 1) fill out a form at the post office requesting information on the box holder, 2) search utility provider records, 3) search 911 records, 4) check the courthouse records, tax maps, etc., but he testified he did none of those things. While "extraordinary" efforts are not required, none of the above would seem to fall into that category. The courthouse records at least were readily available to Mercks with little extra effort. Even the 911 records and utility provider records would not have required "extraordinary" effort to obtain. The evidence showed that the courthouse tax records provided the physical address for Wilson's property, where he testified he could have likely been personally served during the relevant time frame. The evidence also showed that the utility records would have provided Wilson's physical address. We therefore conclude that Wilson's actual address was "reasonably ascertainable", and that constructive notice alone, under these circumstances, would not suffice.[1]

We note that the statute specifically dealing with proper notice in tax lien enforcement law suits, Tenn. Code Ann. §67-5-2415, provides that the defendant may be served by mail or in person, but that service by mail requires that "the summons and notice" be sent via certified or registered mail, return receipt requested. Here, the sheriff's office merely sent a letter, not a notice and summons, and it was sent regular mail rather than certified mail.[2] Since the statute governing notice was not complied with in either manner, i.e. personal service or certified mail, the Trial Court erred in finding that notice by publication was sufficient.

Finally, Wilson asserts that the Trial Court should have awarded him damages pursuant to 42 U.S.C. §1983, for a violation of his constitutional due process rights. Since the Trial Court found no violation, it did not reach the issue of whether rights were violated as a result of a governmental policy, procedure or custom, and whether there was a direct causal connection between such custom and the violation. Accordingly, these issues upon remand will be determined by the Trial Court.

The Judgment of the Trial Court is reversed on the issue of adequate notice, and the

---

[1] In *Romans*, this Court held that where the mortgagee bank had the owner's correct address, and the bank's interest was noted on the trust deed, the owner's address was reasonably ascertainable. Obviously, this would require not only searching the courthouse records to locate the bank's interest, but then also contacting the bank to get said address, which would have been more than what was required in this case.

[2] As a final note, the trial court also relied upon the presumption that the letter had been mailed and not returned as establishing receipt of same, but that presumption should not have been relied upon as it did not arise under the facts of this case. Mercks testified that a letter was mailed, but no specifics were attested to as regarding whether the letter was duly addressed, stamped, deposited, etc., as the case law requires. *See Warmath* and *U.S. Life*, *supra*. The trial court should not have relied upon that presumption without sufficient facts in the record to establish same.

tax sale will be invalidated. Upon remand, the Trial Court should address the plaintiff's claim pursuant to 42 U.S.C. §1983 and 1988. The cost of the appeal is assessed to Blount County.

_____
HERSCHEL PICKENS FRANKS, P.J.